UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HUBERTO PENALOZA VARGAS,

Petitioner,

v.

WARDEN OF THE CENTRAL VALLEY ANNEX, and DEPARTMENT OF HOMELAND SECURITY,

Respondents.

Case No. 1:26-cv-04765-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS IN PART, AND DENY PETITIONER'S MOTION TO ENFORCE AS MOOT [1]

(Docs. 1, 13)

FIVE-DAY OBJECTION PERIOD

Petitioner Huberto Penaloza Vargas, an immigration detainee in U.S. Immigration and Customs Enforcement ("ICE"), filed a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 on June 22, 2026. (Doc. 1, "Petition").

Liberally construed, the Petition challenges Petitioner's re-detention without notice or hearing, alleges noncompliance with regulations governing detention post-final order of removal, and asserts that continued detention without a bond hearing violates due process. (*Id.* at 6-7). As relief, Petitioner seeks, *inter alia*, immediate release. (*Id.* at 7).

Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. §

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2026). Although labeled a motion to enforce (Doc. 13), the motion seeks expedited relief.

1226(c)(1)(A) because his conviction for aggravated animal cruelty under Florida Statute § 828.12(2) is a crime involving moral turpitude. (Doc. 11). In his traverse, Petitioner argues that his re-arrest and re-detention were unlawful because no material change in circumstances established that he posed a danger or flight risk. (Doc. 12).

For the reasons below, the undersigned recommends granting the Petition in part on procedural due process grounds and denying the motion to enforce as moot.[2]

## I. BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States without inspection. (Doc. 11-1 at 2). His Form I-102 application was denied on November 2, 2004. (*Id.*).

On July 24, 2023, Petitioner was convicted of aggravated animal cruelty in violation of Florida Statute § 828.12(2) and discharge of a firearm in public in violation of § 790.15(1). (*Id.* at 3; Doc. 11-2 at 6).

On November 14, 2023, ICE encountered Petitioner at a probation office in Kissimmee, Florida. (*Id.*). U.S. Citizenship and Immigration Services ("USCIS") issued an administrative warrant and a Notice to Appear charging Petitioner as removable under 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection). (*Id.* at 4-9). He was released on his own recognizance that day. (*Id.* at 10).

On November 13, 2025, ICE took Petitioner into custody for allegedly refusing to comply with his conditions of release and "officer directions." (*Id.* at 2, 13-15). He remains in ICE custody at the Mesa Verde Detention Facility in McFarland, California. (Doc. 14).

The record does not establish that Petitioner is subject to a final order of removal or was released under a post-final-order Order of Supervision. Rather, it reflects release on recognizance in November 2023. (Doc. 11-1 at 10). The Court's review of the EOIR's Automated Case Information System indicated that an appeal from an immigration judge's removal decision was received on August 14, 2026, and remained pending as of October 15, 2026. *See* EOIR

---

[2] In light of the Court's conclusion that Petitioner's detention violates his procedural due process rights, the Court declines to address Petitioner's substantive due process claim for relief.

Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited October 15, 2026). Accordingly, the record does not support Petitioner's claims insofar as they depend on regulations governing post-final-order detention or release.

## II. APPLICABLE LAW AND ANALYSIS

A district court may grant habeas relief to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts retain jurisdiction over habeas challenges to immigration detention that are "sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

### A. Petitioner is Not Subject to Mandatory Detention on This Record

Section 1226(a) authorizes arrest and detention of an alien pending a decision on removal and grants the government broad discretion to continue detention or release the alien on bond or conditional parole. § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). Regulations provide for an initial bond determination and review by an immigration judge. *Jennings*, 583 U.S. at 306; 8 C.F.R. § 236.1(d)(1). At an ordinary initial bond hearing, the noncitizen bears the burden of establishing a preponderance of the evidence that they are not a danger to the community or a flight risk. Matter *of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).

After discretionary release under § 1226(a), the government may revoke bond or conditional parole and rearrest a noncitizen at any time, but courts have held that rearrest must comply with constitutional constraints and generally requires a change in circumstances. *M.R.R. v. Chestnut*, 2025 WL 3265446, at *3 (E.D. Cal. Nov. 24, 2025) (internal citations omitted); *Martinez Hernandez v. Andrews*, 2025 WL 2495756, at *10 (E.D. Cal. Aug. 28, 2025) (while allowing for rearrest at any time, "this does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

Section 1226(c), by contrast, "carves out a statutory category of aliens who may *not* be released under § 1226(a)," and requires detention of certain noncitizens who fall within specified

criminal categories. Jennings, 583 U.S. at 289 (emphasis in original). As relevant here, § 1226(c)(1) applies to a noncitizen who is inadmissible because of an offense covered by § 1182(a)(2), including a crime involving moral turpitude. 8 U.S.C. §1182(a)(2)(A)(i)(I). Such a crime requires both reprehensible conduct and a culpable mental state. *Silva v. Garland*, 993 F.3d 705, 712 (9th Cir. 2021) (*citing Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 833 (BIA 2016) ("moral turpitude generally refers to conduct that is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general")).

Respondents argue Petitioner is subject to mandatory detention under § 1226(c)(1)(A), based on his conviction for aggravated animal cruelty under Florida Statute § 828.12(2) because it is a crime involving moral turpitude ("CIMT"). (Doc. 11). Respondents have not established that § 1226(c)(1)(A) governs Petitioner's detention for two independent reasons.

1. No Qualifying Charge of Inadmissibility

Initially, Respondents' argument fails because "the plain language of 8 U.S.C. § 1226(c)(1)(A) requires an administrative charge of inadmissibility by reason of having committed an offense covered in 8 U.S.C. § 1182(a)(2) as a prerequisite to mandatory detention under that provision." *Colmenares-Pinto v. Warden of Golden State Annex Ice Det. Facility*, 2026 WL 923804, at *2 (E.D. Cal. Apr. 6, 2026), *report and recommendation adopted*, 2026 WL 1430913 (E.D. Cal. May 21, 2026); *see also S.G. v. Warden of the Golden State Annex Det. Facility*, 2026 WL 2475525, at *2 (E.D. Cal. Aug. 24, 2026) ("this District routinely finds that § 1226(c)(1)(A) does not authorize mandatory detention where [DHS] [ ] has failed to charge a noncitizen with any offense covered by § 1182(a)(2).").

Petitioner's Notice to Appear charges inadmissibility under § 1182(a)(6)(A)(i), not § 1182(a)(2), and does not refer to his criminal record. (Doc. 11-1 at 4). Respondents identify no subsequent charge under § 1182(a)(2). Moreover, the November 13, 2025 Form I-213 states that Petitioner's conviction is not chargeable under the Immigration and Nationality Act. (*Id*. at 3). Respondents therefore have not established the qualifying charge under the forgoing authorities.

////

2. Insufficient Record to Establish a Crime Involving Moral Turpitude

Even absent the threshold defect, Respondents have not established that Petitioner's aggravated animal cruelty conviction qualifies as a crime involving moral turpitude.

Florida Statutes § 828.12(2) [3] reaches intentional acts, as well as certain failures to act by an animal's owner or custodian, resulting in cruel death or excessive or repeated infliction of unnecessary pain or suffering. Respondents identify no decision of a federal court of appeals or Board of Immigration Appeals holding that the statute categorically defines a crime involving moral turpitude. Instead, Respondents argue the statute is divisible because Florida's standard jury instructions identify alternative elements requiring jury unanimity. They contend that the Court may therefore apply the modified categorical approach. (Doc. 11 at 2 (citing *Descamps v. United States*, 570 U.S. 254, 260-78 (2013); *Mathis v. United States*, 579 U.S. 500 (2016)); *Castrijon-Garcia v. Holder*, 704 F.3d at 1205, 1212 (9th Cir. 2013) ("If the crime does not qualify under the categorical approach, we apply the modified categorical approach and look to the documents within the record of conviction to see whether the conviction in the particular case involved moral turpitude.").

Assuming without deciding that the statute is divisible, the record remains insufficient. The modified categorical approach permits examination of a limited class of conviction documents to identify the offense and elements underlying the conviction. Those elements are then compared with the relevant federal standard. *Mathis*, 579 U.S. at 505–06 (for statutes having multiple alternative elements, the sentencing court "looks to a limited class of documents ... to determine what crime, with what elements a defendant was convicted of. The court can then compare that crime … with the relevant generic offense.").

---

[3] Under Florida Statute § 828.12(2),

> A person who intentionally commits an act to any animal, or a person who owns or has custody or control of any animal and fails to act, which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or who causes the same to be done, commits aggravated animal cruelty, a felony of the third degree.

Respondents submit charging documents and a judgment and sentence but do not explain how those documents identify the statutory alternative underlying Petitioner's conviction. (Doc. 11-2). Indeed, they concede that the conviction is "indeterminate." (*Id*. at 3). An indeterminate record does not permit the Court to select an alternative offense and then analyze the minimum conduct necessary to commit it. The record must first establish that the selected alternative was the offense of conviction. *See Mathis*, 579 U.S. at 505–06.

Respondents thus have not carried their burden of establishing that Petitioner's conviction qualifies as a crime involving moral turpitude. *See S.G.*, 2026 WL 2475525, at *5 (government bears the burden to prove conduct petitioner was convicted of qualifies as a crime of moral turpitude (collecting cases); *M.J. v. Chestnut*, 2026 WL 2139762, at *5 (E.D. Cal. July 24, 2026).

On the present record, Petitioner is not subject to mandatory detention under § 1226(c)(1)(A).

B. Procedural Due Process

The Fifth Amendment protects persons within the United States, including noncitizens, against deprivation of liberty without due process. *Trump v. J.G.G.*, 604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993); *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). The protections required depend on the individual's immigration status and circumstances. *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). Once noncitizens enter the country, even unlawfully, they are entitled to due process protections, and due process generally requires a hearing before the government deprives a person of liberty, although a prompt post-deprivation hearing may suffice in appropriate circumstances. *Id.*; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958); *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Respondents argue that Petitioner's detention is a permissible part of the removal process, and that the governing statutes do require periodic or additional bond hearings. (Doc. 11 at 4). But Petitioner challenges re-detention after discretionary release, not merely the absence of periodic review. The question before the Court is whether the deprivation of liberty occurred with constitutionally adequate process.

The Ninth Circuit has held that noncitizens apprehended in the interior of the United States are subject to discretionary detention under 8 U.S.C. § 1226(a). *Rodriguez Vasquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026). Having concluded that Respondents have not established mandatory detention under § 1226(c), the Court considers whether Petitioner has a protected liberty interest in continued release and, if so, what process is due. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

1. Protected Liberty Interest

ICE released Petitioner on his own recognizance after his state conviction. (Doc. 11-1 at 10). Discretionary release reflects a determination that the noncitizen does not present a danger or flight risk warranting detention. *See Rodriguez Diaz*, 53 F.4th at 1196; *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Petitioner's release and ensuing time in the community created a protected liberty interest in continued release. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025); *Solano v. Robbins*, 2025 WL 3718831, at *6 (E.D. Cal. Dec. 23, 2025) (collecting cases). His criminal history does not eliminate that interest.

2. Process Due

To determine what process is due, the Court applies the three-factor framework of *Mathews v. Eldridge*: 424 U.S. 319, 335 (1976). Although the Ninth Circuit has noted that the Supreme Court has not expressly applied *Mathews* to constitutional challenges to immigration detention, district courts in this circuit regularly apply it to the re-detention of previously released noncitizens. *See Rodriguez Diaz*, 53 F.4th at 1206–07; *A.E. v. Andrews*, 2025 WL 1424382, at *4 (E.D. Cal. May 16, 2025). The Court follows that approach without deciding whether *Mathews* supplies an all-encompassing test for such claims.

The first factor, the private interest affected, strongly favors Petitioner. Freedom from physical restraint lies at the core of liberty protected by due process. *Zadvydas*, 533 U.S. at 690. Petitioner has a substantial interest in remaining free and maintaining community ties.

*Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017).

The second factor, the risk of erroneous deprivation and probable value of additional safeguards, also favors Petitioner. He received no pre-deprivation custody redetermination hearing. A hearing before a neutral decisionmaker would materially reduce the risk of erroneous detention by permitting review of the alleged release violation and any asserted danger or flight risk. *See A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

The third factor concerns the government's interest and burdens of additional process. The government unquestionably has a substantial interest in enforcing immigration laws, protecting the public safety, and ensuring appearance at removal proceedings. But Respondents have not explained how Petitioner threatens those interests or why a prompt hearing before a neutral decisionmaker would impair those interests or impose more than a minimal fiscal or administrative burden. *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at *7 (E.D. Cal. Oct. 27, 2025); *Noori v. LaRose*, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025); *A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

On this record, the *Mathews* factors weigh in Petitioner's favor. The Court thus concludes that his detention without a hearing violated his procedural due process rights.

C. Remedy

The remaining issue is the remedy required for Petitioner's due process violation. Ordinary due process generally requires a hearing before the government deprives a person of liberty, but a prompt post-deprivation hearing may suffice where pre-deprivation process is impracticable. *See Zinermon*, 494 U.S. at 127–28.

As the assigned district judge previously explained, immediate release may be warranted when ICE's justification for re-detention is pretextual or the petitioner complied with release conditions. *See E.A.T.-B. v. Wamsley*, 2025 WL 2402130, at 4 (W.D. Wash. Aug. 19, 2025); *Arzate v. Andrews*, 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025). By contrast, a prompt post-deprivation bond hearing may suffice when the record reflects disputed release violations and ICE's reliance on those violations is not obviously pretextual, particularly where advance

notice and a hearing could be impracticable or encourage flight. *See Martinez Hernandez v. Andrews*, 2025 WL 2495767, at **12 (E.D. Cal. Aug. 28, 2025)*. In those circumstances, review by a neutral decisionmaker reduces the risk of erroneous detention without requiring immediate release. *M.R.R. v. Chestnut*, 2025 WL 3265446, at *11–12 (E.D. Cal. Nov. 24, 2025).

Immediate release is not warranted on this record. Respondents' evidence indicates that ICE re-detained Petitioner for alleged noncompliance with release conditions. (Doc. 11-1 at 2). Those allegations and Petitioner's criminal history distinguish this case from cases involving compliance with release conditions or plainly pretextual grounds for re-detention.

The undersigned therefore recommends that Respondents provide Petitioner with a prompt, post-deprivation bond hearing under § 1226(a), rather than immediate release. At that hearing, the government must establish by clear and convincing evidence that Petitioner poses a danger to the community or flight risk. See *Yosseline P.G. v. Noem*, 2026 WL 183732, at *5 (E.D. Cal. Jan. 23, 2026); *J.E.H.G. v. Chestnut*, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025).

Accordingly, IT IS RECOMMENDED:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED IN PART;
2. Petitioner's motion to enforce (Doc. 13) be DENIED as moot;.
3. Respondents be directed to provide Petitioner a prompt bond hearing under 8 U.S.C. § 1226(a), at which the government must prove by clear and convincing evidence that he presents a danger to the community or flight risk;
4. If Petitioner is released, Respondents be permanently enjoined from re-arresting or re-detaining him without constitutional adequate process, including: (a) at lease seven days' advance notice; and (b) a pre-deprivation hearing at which the government must prove, by clear and convincing evidence that he is likely to flee or pose a danger if not detained;
5. If legally sufficient circumstances justify arrest without advance notice, Respondents be required to provide a post-deprivation hearing satisfying those requirements within seven days after arrest. If Petitioner becomes subject to a final order of removal and

receives notice of that order, Respondent may detain him solely to execute removal, subject to any bond hearing required by law within the applicable time; and

6. The case be CLOSED.

NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.** *Id.*; Local Rule 304(b) (permitting court to set a different time). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated: October 21, 2026

Helena M. Barch-Kuchta
HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE